Bridges v. Department of Veterans Affairs Mr. Harwood? Good morning. I just want to confirm, you've reserved 5 minutes of your 15 minutes for rebuttal, correct? That's correct. Can you understand how the lighting system works? I think I do. I'll try and follow the rules. Okay. Well, I'm sure you'll become informed as the argument goes on. But you can start whenever you're ready. Good morning. Thank you, Your Honors, for being here this morning. And on behalf of Mr. Frank Bridges, I want to thank you for hearing oral arguments. Mr. Bridges took great hope when he got notice that you were going to hear this case. He is 75 years old, a disabled veteran back in Rockland, Maine. And he is very much hoping that this is the first time that someone is going to look at this claim who does not work in and for and with the Veterans Administration and give it an independent view. Well, you understand that the Court of Appeals for Veterans Claims does not work for the Veterans Administration. They're an independent court, and they feel quite strongly about their independence. I do, Your Honor. I mean no disrespect. It's been a difficult process for Mr. Bridges. He believes strongly that he was not mentally ill before he joined the service, that he had a normal childhood, and due to unfortunate circumstances he's been mentally ill. And he is hoping that you will send him a message once and for all that what happened back in 1950 was not something that was he was predisposed and he did not have mental illness. Counsel, whether he was predisposed or not, though, one of the regulations, 1303C, that was in effect in 1950 specifically excludes, it seems to me, mental deficiencies from the definition of diseases or injuries in the meaning of the applicable legislation. And as I understand it, your claim of what he had in 1950 would, in fact, fall within this pronouncement of mental deficiencies, right? That's what you're suggesting out of 1950 was a mental deficiency. No, Your Honor. There's a couple of pieces. Let me see. First of all, we know today that what he had in 1950 was compensable. Make no mistake, the VA determined it. He's getting paid. He's getting benefits, $2,000. What we know today, with no new facts, no new science, no new medicine, today he is disabled. The question is, we know they got it wrong in 1950. The question is did they get it so wrong that it was clear and unmistakable. Now let me go to the regulation because I think that is important. And I think you've got a difficult decision as to whether you're going to say that regulation exceeds their rulemaking authority or whether we can salvage the regulation. First of all, the regulation was not in effect in 1950. The 330C was adopted in 1961. The government makes a big point that we've got to go back to 1950. We all have to put ourselves in the shoes, and yet they cite a 1961 regulation. But isn't the rating schedule materials that's on page 98, I think, of the red appendix, the predecessor of what became the regulation? It is, Your Honor. And pretty much similar, it strikes me. No, Your Honor. What's unfortunate is they gave you the third page, but not the first two pages. And I have extra copies. I don't know what's appropriate. I can submit them later. But I think it's important. The after oral arguments, submit them to the courtroom deputy. Okay. And they'll be furnished to us. If I may read. Wait. Let me make sure I'm on the same page. They cite 1303C and say that this is the regulation in effect in 1950. Are you telling me that's not true? Maybe I've got the 13. It's 3.303. Yes. 330C is the one that was done in 1961. And the one that was in effect in 1950 is 3. You're right. 1303C. Right. And that's what they cite. Well, after we point out to them that they, up until their brief, they were citing the wrong one. Then they say we're citing, the court below cited the wrong regulation in 1961. But what's important, Your Honor, if I could. Okay. But going back to my question, though. So what I cited to you was, before we had this confusion, 1303C, which specifically excludes from the definition of diseases and injuries and the meaning of the applicable legislation mental deficiency. Yes. And he doesn't have a mental deficiency. We know that today. The question is should they have known that in 1950. He does not have a mental deficiency. And the question is should he have been given the presumption of soundness and aggravation. Well, they determined I guess it was a personality disorder. So I guess it would fit within personality deficiency.  And the question is should he have been given the presumption of soundness and aggravation. To get to that, the presumption is a decision-making tool. It shifts the burden. No one's saying that if you have a preexisting personality disorder, you don't get VA benefits. And the government isn't saying that if you have a nervous breakdown, you do get. We all know that. But, Counselor, the presumptions of aggravation and soundness would only be applicable after a determination has been made that you're alleging a disease or injury compensable under the statute. That's the only way that's compliant. You can't aggravate and derive compensation from something that is not deemed to be an injury or disease under the statute. So that presumption of aggravation is inapplicable to something that is not compensable under the statute. With all due respect, Your Honor, I think you're falling into the same trap as the government. The presumption is a fact-finding tool to get to the result. We didn't allege in 1950 that we had a disease. What happened was this young man was taken in a straitjacket from his barracks to a mental hospital in a complete mental breakdown. He's lying on his back, and the government says, we now have to decide whether you're compensable or not. I'm very sympathetic to the facts, but I'm really bound to, and unfortunately our jurisdiction is so narrow that no matter how much I would want to do something to you and help you with regard to the facts, I can't go there. I can't even go to the application of a lot of the facts, which I find quite frustrating in some of these cases. And I'm sorry, let me see if I can finish, because I do want to answer your question, and I don't mean to avoid your question. The question is, should he have been given the presumption before? The presumption of innocence is something we're all familiar with. You don't say, after we've determined guilt or innocence, then we decide whether to give the presumption of innocence and say to the government, you have to prove beyond a reasonable doubt. You do that in the first instance, and the government, the Congress did it for a very important reason. They understood the mismatch. This is David versus Goliath. This is an 18-year-old veteran, a young man on his back against the government. They said, when you make these important decisions, is it a preexisting personality disorder, or is it a nervous breakdown? He's entitled to that presumption. I understand your legal argument, but let's look at it in the context of the facts of this case. What happens here, I take it, is that he gets a diagnosis from a medical professional who looks at him and says, this diagnosis is personality disorder. Then the rating is done on his claim and says, well, this diagnosis is personality disorder. Personality disorder is outside of the scope of what's compensable. What effect does the presumption, what role does it have to play in that relatively simple process? There wasn't any conflicting evidence so far as I can see. What is to be done other than what the rating official did? Then you've essentially written the presumption out of the process. If you say you go to the health care professional, you take the diagnosis, and the RO rubber stamps the diagnosis, and that's the end of it, then there's no presumption. The presumption comes in at the RO stage. He's the decision maker. This is the agency below him. And the RO looks at the record, which consists of this diagnosis. And he says, now I've got to give the presumption. I first want to see the entrance exam that when he joined the military. No evidence of mental illness. Immediately we have a presumption problem. Where's the pre-existing evidence that it pre-existed, his military? But I think, Mr. Kramer, I guess what the panel is sort of wrestling with here is, if in fact the diagnosis had been something that was compensable, in other words, if your client had been diagnosed with paranoid schizophrenia or some depression in 1950, then they would have said, okay, he's got something that's compensable. You get the presumption either way. No, no, but wait, let me finish. He would have been compensable. And they would have said, well, there's no existing condition. And the only way at that point the government could have, or I guess he was in the Marine Corps, or the Veterans Administration could have denied the claim was to establish by clear and convincing evidence that in fact this was a pre-existing condition that wasn't aggravated. And he would have prevailed, wouldn't he? Yes, but it shouldn't depend on, you put way too much weight on the health care professional. The health care professional doesn't trigger the presumption. No, we're not putting too much weight on the health care professional. We're simply putting weight on what is diagnosed at the examination. If he had been diagnosed with depression or schizophrenia or whatever, he would have been compensated. Correct? Shouldn't he get... But wait a minute. Okay. Please. Yes, yes. He would have been compensated. And the only way you would have gotten to a pre-existing condition would have been if the government had raised the issue and said, no, no, he had this before, and then the government would have had a high burden of proof on that. That's a different case, and you're absolutely right. The case we have is, so the health care professional says, let's take it out of mental illness. It's a broken leg. He arrives in the hospital. He's got a broken leg. The health care professional says, he's had a broken leg his whole life. RO gets the medical report. But a broken leg is compensable. Exactly. No, not if he's had it his whole life. That's a pre-existing injury. No, but it's compensable. It's the kind of injury as to which it's reasonable to assume that it may have occurred at some point, such as in service. Whereas, suppose, to take another example that may be easier than this one, if the diagnosis is a mental retardation, let's say, for lack of a better term, the person has just not got the mental ability to do what is minimally required to satisfy the requirements of service. It wasn't noticed in his intake examination. But it's a condition that's congenital. It lasts all your life. It isn't something as to which there's any suggestion that it occurred as a result of some incident in the service. It's congenital retardation. In that setting, the presumption, it seems to me, doesn't have any effect. It doesn't have any role to play, right? Take my facts. How would the presumption work in that setting? You would look and you would say, well, it's true that we didn't see anything at the intake, but of course we wouldn't expect to have a different result by virtue of having seen something at intake or not. Well, I would agree. And what their own records say is that in the 330C, the medical principles must be so universally recognized as to constitute clear and unmistakable proof of the fact. If there were, and you had this case in Terry, if there is a degenerative eye disease, which we can state with medical certainty, we diagnose it, it is a degenerative disease, you couldn't pick it up at the entrance exam, you're going to end up with it at some point in your life, whether you're in the military or not, I would agree at that point you don't need to go through the presumption. That is, under their chevron, they can fill in the gaps. That's not mental illness. Suppose he has a personality disorder, because that was the diagnosis in 1950. How does the presumption change the outcome if it applies? So if there's a presumption of soundness, okay, well, he developed the personality disorder since joining, or it's somehow service-connected, it's still not a compensable injury. So even if we give you that presumption, grant you it 100%, it's still not compensable because it doesn't change the nature of his underlying condition. They would have realized the diagnosis was wrong. Maybe this is the part where I'm not connecting with you. Had they gone through the exercise of the presumption, they would have known to a certainty the diagnosis was wrong. The diagnosis depends on symptoms throughout your life. You can't have a preexisting personality disorder and go through 18 years of your life and 18 months of Marine service and have no symptoms. They would have seen the symptoms. Isn't that asking us to change the diagnosis, which is beyond our jurisdiction to do? No. I think what you're asking to do is go back to the RO and say to the RO, you should have applied the presumption. Had you applied the presumption, you would have recognized that it was wrong because there was no evidence. That's what Congress said. Congress didn't say don't apply the presumptions in mental illness cases. Congress said give these veterans the benefit of the presumption in mental illness cases, and you can't take it away from them. By letting the doctor make a diagnosis. Even with the presumption of soundness in this case, when he joined the service, the notion that he came down with the disease afterwards, it's still not a compensable disease. Even if we give the presumption of aggravation, you had it before, it got worse in service. It's still not a compensable disease. Neither of those presumptions can possibly change the outcome in this case. I understand that, Your Honor. He didn't have it before. There was no evidence he had it before, and if he had it before, he would have had symptoms before. That's not what they found. That's where I'm having trouble following you. I go back to my example of retardation, which just didn't get picked up at the intake exam. The evidence we've got here in my case, all that the RO has before it, is the fact that this wasn't picked up, the person went into the service, and then there was an ultimate determination that the person's unsuitable because of lack of mental ability. What we may be missing is, just because it isn't picked up at the entrance exam doesn't mean the veteran wins. We have to go back and do the hard work, do the real work. Was it a pre-existing condition? And there had to be symptoms. The government keeps saying, where was Mr. Bridges' alternative diagnosis? Didn't he have a psychiatrist when he was 15 years old who gave him an alternative diagnosis? But there was no diagnosis of... Because he was healthy, and they would have figured it out. No, no, but they would have diagnosed... I mean, there was no diagnosis at the time of the examination of a compensable condition. Are you saying that if they'd gone back, there would have been evidence of a compensable condition? No, exactly the contrary. They would have seen a clean bill of health. They would have asked for all his childhood medical records. They would have made an investigation and said, you know, this seems like he had a normal 18 years of life. Then they would have gone back to the diagnosis and said, is it possible to have 18 years of normal life? 18 months, he was a Marine with a clean record. Not a single symptom. Well, kind of a thing like a personality disorder might not come out. No, Your Honor. We all have personality quirks that we deal with, and we try to not make them manifest on the surface of our day-to-day life, I suppose. You can try and overcome them, Your Honor, but that's not the diagnosis, and that's not... The diagnosis is the preexisting personality disorder. Anyway, Mr. Howard, listen, your time has... My apologies. No, no, you had a number of questions, so you've gone over by about... You've used up your rebuttal time plus an additional minute, but we'll restore your full five minutes of rebuttal because you had a number of questions, and we'll hear from the governor. Mr. O'Connell? Mr. O'Connell? In police court, as reinforced by Mr. Bridges' argument and in his reply brief, this is a fact case. It's a case not within the jurisdiction of the court. Mr. Bridges certainly makes a number of factual-based arguments. Well, there are really two arguments. I mean, the first argument, as I understood from the brief, was that the diagnosis was wrong, and the second argument was what we've been discussing at length, I guess, with Mr. Harwood, this question of whether they improperly applied the presumption analysis or didn't apply it. Now, certainly, I think you're correct, Mr. O'Connell. The first one, we don't have jurisdiction. We can't look at the correctness or incorrectness of the diagnosis, but the second one does seem to be a legal argument. Now, he may be right, he may be wrong, but it does seem to be a legal argument. The argument with respect to the presumptions, the R.O. in 1950 is presumed to have acted correctly, including applying the presumptions to the extent that they apply. That's the court's decision in Natalie. And I think the case ends right there, the decision doesn't say specifically one way or another that they considered it, but under Natalie, they're presumed to have considered that presumption to the extent that it's applicable. But even if the case does not end there, as I think the argument pointed out, he has a non-compensable condition, so in when the Veterans Court said that... He was diagnosed with a non-compensable condition. He was diagnosed with a... We now know he has a compensable condition. Yes, in when the Veterans Court stated that the presumptions do not apply to a non-compensable condition such as this, this court seemed to approve the Veterans Court's decision in when in the court's Terry decision. Counsel, did you raise that? You made an argument just a minute ago, which I find very interesting, about our court's Natalie decision, and in particular that there's a presumption that the RO did apply the presumptions of soundness and aggravation, and we should treat his decision as such in the absence of evidence of the contrary. And I didn't see that argument briefed in your brief. So am I wrong? Can you show me where it is? I do see that you cite Natalie, but not for that proposition. Page 12 is the only place I see that. I think it's a very good argument, but is it being raised for the first time here on appeal in oral argument? The argument we raised, I believe, sets out the standard correctly, Your Honor, which quotes Natalie, actually quotes Haupt, which cites Natalie that in the absence of evidence to the contrary, the rating board is presumed to have made the requisite findings. Make the requisite findings. That's different from apply the appropriate legal presumptions, isn't it? I mean, you're not saying this. You're saying this in the context of fact findings, not in the context of did they or did they not apply presumptions of soundness and aggravation. Which I understand to be a different legal argument. Am I wrong? Well, what we meant to do here is just simply cite the law, which is that the RO was presumed to have acted correctly because in 1990 they operated under this framework that they didn't have to set out in detail the basis for their findings. What is your view? I think you alluded to it briefly, but I want to make sure I understand. What your view is is the right protocol here for the RO, whether in 1950 or now, to analyze a claim in which the medical evidence, at least on its face, suggests a condition that would be in the category of conditions such as a personality disorder. Does when and in what way does the presumption come into play, in your view, if the RO is acting correctly? Well, you could state it either way, that the presumption simply doesn't apply, which is what the Veterans Court stated in when. Or we could state it the way this Court said in Terry, which is slightly different, is that the presumption is automatically rebutted once the medical evidence shows that the condition is a non-compensable condition. I don't think, at least in the confines of this particular case, that it matters which way we say it. But the RO, when they received the claim, they saw the two different medical diagnoses reaching the same conclusion of passive dependency reaction, they could have either said, well, this is a non-compensable condition, the presumption doesn't apply, therefore it's not a compensable disease or defect, or they could have simply said that this is passive dependency reaction, the presumption of soundness is automatically rebutted, and the conclusion is the same, that it's a non-compensable disease or injury for purposes of controlling law, which is exactly what they did. And you've described two different, at least technically different protocols, which do you think is the correct approach under the statute? I'm not sure that they're different, I think it's just saying almost the same thing differently. Mr. Harwood thinks they're significantly different. He argues that if you start with the presumption, rather than starting with the diagnosis, that you start with the presumption, it makes the diagnosis potentially something that you would look at with a more skeptical eye if you start with the presumption that this person who was tested in sound condition in fact does not have a background in that condition, or evidence of a background. When the RO saw the diagnosis of passive dependency reaction and said that they did apply the presumption, then they would have said, well that presumption is automatically rebutted by that evidence of passive dependency reaction. I know that Mr. Bridges is trying to make a distinction, but for example in the current regulation, refractive error in the eye and personality disorders are mentioned in the very same sentence of the regulation which describes non-compensable diseases or defects. So the court would have to draw an extremely fine line in order to somehow separate these conditions that appear in the very same sentence of the regulation as being non-compensable. Just out of curiosity, the statute says diseases or injuries. How is it that the VA has come to the conclusion that mental defects or mental diseases ought not to be included? The statute doesn't really allow for exceptions. What's the basis upon which that exception has been carved out? As to the history of why the VA has carved them out, I can't answer that question now, Your Honor. We could submit a supplemental brief if you would like. Well, correct me if I'm wrong, but my understanding was that there are certain mental conditions that post-traumatic stress syndrome, for example, that are compensable. Sure, that's right. And the VA sends out a lot of checks every month. Sure, I'm sorry. I didn't mean to mislead you by tending to imply that mental conditions as a whole group are not compensable. Certainly there are lots of mental conditions that are compensable. It's essentially as a class the congenital conditions that are not subject to the same analysis I've taken.  I would ask the Court to affirm the Veterans Court. Thank you. Thank you, Mr. O'Connell. Mr. Harwood, you have your full five minutes. Thank you, Your Honor. Judge Moore, I think your last question may have really touched on important. What we're trying to struggle with here is to figure out which are the compensable mental illness and which are the non-compensable mental illness. Congress made no distinction. Mental illness is compensable to the same extent as physical illness or physical disease. They are all together. Those that are not compensable are those that are preexisting. If you arrive in the military with the illness, with the defect, with the disease, you don't get compensation. If it's caused as a result of your service in the military, you do. That's the critical question, not whether we can characterize it as a particular disease or diagnosis. And that's what the presumption is so important here, to help figure out what's preexisting and what isn't. And it's just the same for physical and mental. If we all of a sudden have a soldier show up at the hospital with a condition, we have to figure out, did he have the condition when he arrived or didn't he? And he gets the presumption that he didn't have the condition if they didn't note it on the entrance exam. That's not the end of the discussion. The discussion that goes on from there into a fact-finding, could we figure out whether he had the condition before or not? Were there symptoms? Now, there may be some diseases in which it is impossible to pick up. And I think in the Terry case, you handled it correctly, where you sought a degenerative eye disease. There would have been no way to pick that up on the entrance exam. Perhaps hearing loss would be another. Mental illness is not one of those. It doesn't lie asleep inside you based on your DNA and your genes and all of a sudden just miraculously arrive in the 20s. I don't know whether you're right or wrong, but your statement here, as far as I can see, isn't supported by anything in the record. And it's contrary to my experience, which is there are many mental conditions that are essentially latent until there's something that triggers the mental disease. But it was there before. Now, you can argue whether the stressor or the trigger or whatever it is ought to be enough to render that condition compensable or not, but the condition preexisted, even though it may not have been symptomatic. You're right, Your Honor. There could be some that are like that. That's not the case here. The evidence here, Mr. Bridges, as we know today, based on the VA's own finding in 2000, that he did not have the preexisting. The symptoms are ambiguous, and that's the problem. It is difficult to diagnose which category of mental illness to put it in, and Congress knew that. They wanted to get it right for these veterans, and they gave them the presumption. Mr. Bridges, they got it wrong. We know that in 1950. Why couldn't we give him the presumption? Well, you don't know. Isn't that a little bit of a strong statement? You don't know for sure they got it wrong in 1950. He might have had a personality disorder or condition in 1950, but over a period of more than 45 years, he developed depression. Isn't that what he was diagnosed with in 1999, or what he filed his claim for in 1999 was depression? Yeah, but based on the 1950. Right, but I'm saying as a factual matter, isn't it certainly possible that someone could have a personality disorder in 1950, but then 40 years later, they've developed into a condition of depression? Which was service-connected by virtue of events that occurred during the service as determined by the… It's possible to have two different avenues going at the same time. I think it's what Judge Hall is saying, and I think he's right. It's interesting. I hadn't thought about it. They had the same facts. He was out of the service. They looked at the same facts, the same situation. I don't see how you can reconcile the 99 and the 1950 decisions. Well, one thing, if you accept both, for the moment, if you were to accept both diagnoses as correct, he was in a condition in 1950 that reflected a personality order. However, in the year 2000, he was in a state of depression. But he hadn't been in the military for those 50 years. No, but it could still have originated, the depression could have originated during the military. Then they got it wrong in 50. If the depression hadn't manifested until 98, in other words, it could be two different conditions. But the depression that they were finding was the same depression that started in 1950. What they ruled in 1999 was that from 1950 to 1999, he had the same condition. He had the depression that was caused by these triggers of not being allowed to go home and paying his last respects to his dying father and being put under combat training to get ready to go to the Korean War. And most young men, many young men, would have responded the way he did. And they should have considered that under the presumption. Had they applied the presumption, they would have followed and weighed those facts, and I believe they would have gotten it right at that time. Thank you, Mr. Harwood. The case is submitted. The final case in which we'll hear oral argument this morning is number 206, F&G Research Incorporated versus Patton Wireless Technologies, Inc. Thank you.